Henry E. Waterman
vs.
Columbus Theatre, Inc., et. al.
} Eq. No. 9474.

October 24, 1929.

BLODGETT, P. J. Heard upon bill, cross-bill, answer and proof.

The complainant, Henry E. Waterman, in this bill seeks to restrain the removal from his real estate of certain property claimed to be part of said real estate.

The respondents named are Frank Packard, a deputy sheriff, Henry J. Annotti, Domenic Annotti and the Columbus Theatre, Inc. The actual respondents are Brice D. Armour and Felix Marsello, Domenic Annotti and the Columbus Theatre, Inc., having conveyed their interests to Armour and Marsello.

Complainant is the owner of certain real estate in Providence described in Paragraph 1 of said bill. This property is known as the Columbus Theatre and was purchased by complainant at a mortgagee's sale following foreclosure of a mortgage from the Columbus Theatre, Inc., to said complainant. Paragraph 2 of said bill alleges that certain articles of property had been affixed to said theatre and become fixtures and passed to complainant by virtue of said deed and that respondents have threatened to remove the same.

Respondents have filed a cross-bill alleging that previous to said foreclosure sale the Columbus Theatre, Inc., owned said real estate that prior to said sale Felix Marsello was the owner of certain personal property located in said premises, naming said articles in paragraph 5 of said cross-bill; that Brice D. Armour was also the owner of certain articles in said premises prior to said sale, naming said articles in paragraph 6 of said cross-bill; that said Armour attached certain personal property in said thea-

tre and placed said Packard, a deputy sheriff, as keeper of same. The cross-bill then prays that said Waterman be enjoined from using said articles of personal property.

The sole issue is: Does this property belong to Waterman or to Marsello and Armour?

The Columbus Theatre is a large theatre on Broadway, Providence, and very completely equipped for presentation of moving pictures, having a large auditorium provided with seats, a large stage, and upon this stage an organ. The theatre is further equipped with lighting and heating apparatus.

Respondents in their cross-bill practically claim as their property most of the furniture, the organ, the lighting apparatus and most of the accessories with which said theatre is supplied and which are necessary for the use of any one presenting performances in said theatre.

Are the articles claimed fixtures?

If not, to whom do they belong?

The mortgage deed of Columbus Theatre, Inc., to Waterman is in the usual form and describes the real estate conveyed (Complainant's Exhibit 2). The mortgagee's deed after foreclosure and sale is also in the usual form (Complainant's Exhibit 3).

The mortgage deed in question, dated Feb. 8, 1927, runs from the Columbus Theatre, Inc., to Henry E. Waterman.

Feb. 5, 1927, the Columbus Theatre, Inc., executed a bill of sale to Brice D. Armour of substantially all the articles furnishing said theatre. On said Feb. 5 Domenic Annotti executed to said Armour a bill of sale of all furnishings of said theatre, including the organ installed on the stage. No mention is made in the mortgage deed of the existence of such bills of sale. The bill of sale of Domenic Annotti contains a clause that if said Annotti is able to take up a mortgage of $100,000 dated Feb. 27, 1927, then the said Brice D. Armour agrees to return the

property described in said bill of sale.

It is claimed by complainant that this bill of sale is a personal property mortgage. Neither of said bills of sale were recorded.

Irrespective of the existence of said bills of sale and of the validity of the same as against the claim of complainant, they include the fittings and furnishings of the theatre which are claimed by complainant as fixtures and part of the real estate conveyed under the mortgage deed and the mortgagee's deed.

There appears upon the record testimony relative to a meeting in the office of the Title Guaranty Company and also in the record office previous to the recording of the mortgage of the Columbus Theatre to complainant. viz., Feb. 8, 1927, and as to conversations there relative to the inclusion in said mortgage of certain furnishings and fittings of said theatre, viz., the seats and the organ. This testimony was admitted against the objections of complainant's counsel.

The mortgage was recorded after such conversations and the Court cannot see how in any respect such conversations can change or explain the language used in the mortgage deed. If the Court believes that complainant was present and knew that the seats and organ were not included in said mortgage and made no protest at that time, yet in the opinion of the Court it would not change or vary the terms actually used, and the Court does not think it was necessary for complainant at that time to have made any protest.

The real question at issue is whether these articles claimed by·respondents are or are not fixtures of a theatre.

The terms used in the conveyance are: "with all the buildings and improvements thereon, or that may be placed thereon."

The case of *Canning* vs. *Owen*, 22 R. I. 624, determines what are fixtures

40

in our State: The common law rule is held correct, viz.: "That whatever is once annexed to the freehold which is designed by the owner thereof to be used and enjoyed in connection therewith becomes a part of the realty and passes with the conveyance thereof."

"As between vendor and vendee all fixtures pass to the vendee, even though erected for the purposes of trade and manufacture, or for ornament or domestic use, unless specially reserved in the conveyance."

Sands vs. Pfeiffer, 10 Cal. 264.

In the present case all fixtures pass to the complainant unless a reservation appears in the mortgage deed, and unless title to same passed under bills of sale.

At foot of page 628 and top of page 629 (Canning vs. Owen) this language is used:

"We are aware that it has been held in some cases that in order to give chattels the character of fixtures they must be so affixed to the realty that they cannot be removed without physical injury thereto; but we think the better opinion, as well as the better reason is the other way, and in favor of regarding everything as a fixture which has been attached to the realty with a view to enhance the value thereof and for the purpose of being permanently used in connection therewith."

"In other words, the question whether chattels are to be regarded as fixtures depends less upon the manner of the annexation to the freehold than upon their own nature and their adaptation to the purposes for which they are used."

Canning vs. Owen, supra, 629.

This building was built for a theatre. The stockholders in voting to mortgage same name it as "the theatre property." The liberal rule of construction laid down in Canning vs. Owen, and followed even more liberally in McCrillis vs. Cole, 25 R. I. 156,

must then be applied in determination of what furnishings of this theatre are fixtures.

There is no doubt in the mind of the Court that the seats are fixtures. It is difficult to imagine a theatre without seats. It would be practically impossible to exhibit pictures or present a play without seats for the audience. Seats are an integral part of a theatre.

Electric light fixtures have been held to be fixtures in many jurisdictions as well as in Rhode Island. Electric fixtures and all apparatus connected are fixtures. A theatre for the projection of movie pictures could not be run without an apparatus for throwing pictures upon the screen. Such apparatus is a fixture. A ticket chopper placed in the lobby for use in the sale or collection of tickets is a fixture. Mirrors set in the walls of the lobby as well as rubber mats made of a certain size for fitting into recesses in the floor of a theatre are fixtures. The switchboard and panel is a fixture.

The organ was built upon the stage and connected with a console set in the pit of the auditorium.

In Chapman vs Union Mutual Life Ins. Co., 4 Ill. App. 29, a church organ was held to be a fixture, and the following appears upon page 35:

"Chattels become real estate when they are annexed to the freehold under such circumstances that it clearly appears from an inspection of the property itself, taking into consideration the character of the annexation, the nature and adaptation of the articles annexed to the uses and purposes of the freehold at the time the annexation was made, and the relation of the party making it to the freehold in question, that a permanent accession to the freehold was intended to be made by the annexation."

Under the reasoning applied in the

above case the organ is determined to be a fixture.

Following this rule, the stage equipment and the mural decoration painted upon canvas and attached to the proscenium arch must be regarded as fixtures.

A stipulation was entered upon the record containing a list of articles not claimed by Waterman.

There remains the question as to the effect and validity of certain bills of sale, viz.: that of Columbus Theatre, Inc., to Brice D. Armour (Respondents' Exhibit I) and that of Domenic Annotti to 'Brice D. Armour (Respondents' Exhibit J). There is also a question as to the title of certain articles claimed by Felix Marsello by reason of the assignment of certain contracts to him. (Respondents' Exhibit D). Armour in his testimony as to these two bills of sale states the consideration for them was "going back $50,000 on my third mortgage," (Answer to Q. 61, p. 206) and also a life insurance policy for $50,000. He further testified as to a meeting of the corporation in Wright's office, and that he saw Mr. Waterman in the consultation room.

Q. 141, p. 216: · When you were in this room will you tell me what was said by 'Mr. Waterman. I want his language as you are able to remember it.

A. I never met Mr. Waterman when he had very much to say in any event. ·

Q. Mr. Waterman wasn't much of a talker?

A. No; a good listener.

Q. 147. At the present moment you don't remember what he said?

A. ·He talked but just what he said, I can't tell you.

Nathan M. Wright, Jr., in whose office negotiations respecting the mortgage of complainant occurred, testified he had no recollection of seeing Waterman in his office prior to execution of the mortgage; that at the record office Waterman and Crompton were present; that he could not exactly state that Armour had told him that he (Armour) had a ·bill of sale of the organ (Q. 44, p. 287); that Waterman was not present at the time of this conversation (Q. 48, p. 288). that the mortgage was recorded after this conversation with him (Wright) relative to clingfast on chairs and organ (Q. 55, p. 289).

As to whether the bills of sale held by Armour on the organ and seats were shown to Waterman, Armour testified:

Q. 56, p. 205: Did you show the bills of sale to them?

A. I don't think I opened up and showed them to them, any more than I had them in my hand.

There is nothing on the record to show that Waterman had knowledge of the contents of these bills of sale. nor that he in any way assented to the statement that the organ and seats were not mentioned in the mortgage.

The Court is of the opinion if these two items were not to 'be included in the general clause of "or that may be placed thereon," a reservation to that effect should have been included in the original mortgage.

The testimony of Armour relative to his second mortgage is most extraordinary, viz.: that he had advanced $100,000 in cash to Annotti without producing a check or receipt to verify the same. His relegating this second mortgage, subject at that time only to a first mortgage on the property of $80,000, to third place subject to the mortgage of $125,000 to Waterman, does, taking into consideration his testimony as to how and when he advanced this large sum, lead the Court to the belief that the Armour mortgage was placed upon the property in accordance with some agreement and arrangement between Armour and Annotti that does not appear upon the record. At that time it evidently be-

came necessary to raise a large sum of money to finish the theatre and its furnishings, and this sum was advanced by Waterman, viz.: $125 000. No denial is made that this amount was advanced. and it seems to the Court that this fact must be borne in mind in considering the testimony relative to the effect and validity of the bills of sale and assignment of leases made about the same time or subsequent to the execution of the mortgage to Waterman.

The two bills of sale to Armour were executed on the 5th day of February, 1927, two days before the execution of the Waterman mortgage and during the period that negotiations were in progress for the raising of this money. They were not put on record and there is no competent testimony that they were brought to Waterman's attention, that he knew the contents of the same or ever made any acknowledgment thereof. Without passing upon the question as to whether these bills of sale are really mortgages, and as such invalid unless recorded, the Court is of the opinion that the same are invalid as against the title of Waterman under his mortgage.

The interest of Marsello arises from the assignment to him of certain leases of furnishings placed in the theatre. Marsello made a payment by check. dated January 4, 1928, to Annotti which went to the account of H. A. & E. S. Taylor for one "Autodector," two "Powerlite Low Intensity Lamps," two "Ballast Resistors," two "Unitron Rectifiers" and 2,000 carbons, all sold under a lease. Jan. 2, 1928, Marsello paid the Parkinson Piano Company, by check, $400 for pianos leased to the theatre. January 12, 1928, Marsello paid the Boston Store, by check, $300 for carpets leased to the theatre. April 16, 1928, Marsello paid Annotti, by check, $4,937.50, which was paid on account of the organ by Annotti, a part

of which has been repaid by Annotti to Marsello.

It will be noted that all these amounts were paid by Marsello subsequent to the recording of the Waterman mortgage.

As these several articles have been placed in the theatre, and have been determined to be fixtures in accordance with the rule laid down in McOrillis vs. Cole, 25 R. I. 156, the title to same rests in Waterman as far as the claims of Armour and Marsello are concerned.

With the exception of the articles listed on pages 5 and 6 of the record, the Court finds the articles enumerated in the bill of complaint to be fixtures.

The cross-bill is denied and dismissed.

A decree may be entered on the bill of complaint in accordance with this rescript.

For complainant: Tillinghast & Collins.

For respondents: Pettine, Godfrey & Cambio; DePasquale & Turano.